UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
                                         :
 UNITED STATES OF AMERICA                :        19cr91-7 (DLC)
                                         :
                 -v-                     :        OPINION AND ORDER
                                         :
 MAXIMILIANO DAVILA-PEREZ,               :
                                         :
                         Defendant.      :
                                         :
-----------------------------------------X

APPEARANCES:

For the Government:
Matthew J. C. Hellman
David J. Robles
Chelsea L. Scism
U.S. Attorney's Office, SDNY
26 Federal Plaza
New York, NY 10278

For the defendant:
Camille M. Abate
333 Park Avenue South, Suite 3A
New York, NY 10010

DENISE COTE, District Judge:

On October 23, 2025, defendant Maximiliano Davila-Perez was convicted, following a jury trial, of conspiring to import cocaine into the United States, in violation of 21 U.S.C. §§ 959 and 963, and conspiring to use and possess machineguns in connection with the importation conspiracy, in violation of 18 U.S.C. § 924(o).  The defendant moves for a judgment of acquittal pursuant to Rule 29, Fed. R. Crim. P.  The motion is denied.

## **Background**

The trial evidence, taken in the light most favorable to the Government, established the following.  The defendant exploited his position as the Director of Bolivia's chief anti-narcotics law enforcement agency, FELCN, to facilitate cocaine trafficking.  In particular, he conspired with others to ship 1,200 kilograms of cocaine to the United States.  The defendant's role was to provide protection for the shipment when it would leave Bolivia, including by arranging for it to be guarded by armed FELCN officers.  The shipment would be transported first from Bolivia to the Dominican Republic, but was destined for the United States.

A jury trial began on October 14.  Among other witnesses, the Government called cooperating co-conspirators Omar Rojas and Jheyson Montano; Daniel Rodriguez, a DEA confidential source who represented himself to the conspirators as a buyer of cocaine; and Eric Putnam, a DEA Special Agent who testified as an expert in international narcotics trafficking.  Video and audio recordings of the defendant discussing the scheme with Rojas, Rodriguez, and others were played for the jury.

During closing arguments on October 22, defense counsel argued to the jury, inter alia, that the Government had not carried its burden to prove beyond a reasonable doubt that the defendant knew that the cocaine shipment was destined for the

2

United States or that he intended that machineguns would be used or possessed in connection with that conspiracy.  On October 23, the jury found the defendant guilty on a special verdict form that identified each of these elements.

Following the guilty verdict, defense counsel requested an extension to file a Rule 29 motion.  The Court extended the deadline to November 14.  After the defendant requested additional time, an Order of November 12 extended the deadline to November 19.  The motion was filed on that date.  The Government filed an opposition on December 9.

On December 9, the Court received an undated letter from the defendant in which he accused his counsel of ineffective assistance and asked that a new attorney be appointed to represent him.  A conference to address the request for appointment of new counsel is scheduled for December 15.

## Discussion

Rule 29 permits a defendant to move for a judgment of acquittal on the basis of insufficiency of the evidence.  Fed. R. Crim. P. 29(a), (c).  A defendant challenging the sufficiency of the evidence "faces an uphill battle and bears a heavy burden."  United States v. Kelly, 128 F.4th 387, 408 (2d Cir. 2025) (citation omitted).  "[A] reviewing court must sustain the jury's verdict if, viewing the evidence in the light most

3

favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Id. (citation omitted).  A court must "defer to the jury's assessment of witness credibility and its assessment of the weight of the evidence."  Id. (citation omitted).  "[T]he evidence must be viewed in its totality, as each fact may gain color from others, and the Government need not negate every theory of innocence."  United States v. Landesman, 17 F.4th 298, 319 (2d Cir. 2021).  "A court may enter a judgment of acquittal only if the evidence that the defendant committed the crime alleged is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt."  Kelly, 128 F.4th at 408 (citation omitted).

I.   Intent That the Cocaine Would Reach the United States

The defendant argues that there was insufficient evidence for the jury to find that he knew or intended that the cocaine would reach the United States.  The jury was instructed in relevant part as follows:

> Count One charges that there was a conspiracy that had at least one of two objects: (i) to import a controlled substance into the United States, or (ii) to manufacture, possess with intent to distribute, or distribute a controlled substance, intending or knowing that it would be unlawfully imported into the United States.
>
> The word "import" has its common, everyday meaning.  To import a substance means to bring or transport a

4

substance into the United States from someplace
outside the United States.

The Court also reiterated to the jury that "[t]he Government must prove beyond a reasonable doubt that the defendant knew or believed that the object of the conspiracy he joined was to import a controlled substance unlawfully into the United States."

The jury was also charged regarding the concept of conscious avoidance:

You have heard arguments from counsel as to whether the defendant knew that the object of the conspiracy charged in Count One was to import a controlled substance into the United States.  The Government must prove beyond a reasonable doubt that the defendant joined the conspiracy with knowledge that its objective was to import a controlled substance into the United States.  In determining whether the defendant joined the conspiracy with knowledge of its unlawful objective, you may consider whether the defendant deliberately closed his eyes to what otherwise would have been obvious.  The law calls this "conscious avoidance" or "willful blindness."  A person may not deliberately close his eyes to what otherwise would have been obvious.  In other words, a defendant may not willfully and intentionally remain ignorant of a fact material and important to his own conduct in order to escape the consequences of criminal law.

If you find beyond a reasonable doubt that the defendant was aware of a high probability that the object of the conspiracy was to import a controlled substance into the United States but deliberately and consciously avoided confirming that fact, then you may treat this deliberate avoidance of positive knowledge as the equivalent of knowledge, unless you find that he actually believed that this was not the object of the conspiracy.

5

There was ample direct and circumstantial evidence from which the jury reasonably could find -- and did find -- proof beyond a reasonable doubt that the defendant knew that the object of the conspiracy was to import cocaine into the United States.  This includes testimony from three witnesses with firsthand knowledge of the conspiracy -- Rojas, Rodriguez, and J. Montano -- all of whom testified as to the defendant's understanding that the cocaine was destined for the United States.  Rojas even testified that the defendant stated to him that the cocaine "must be going to the U.S., because that's the largest market."  The evidence also included multiple recorded conversations with the defendant that had references to payment coming from the United States, potential buyers in the United States, or competitors in the United States.  There was also circumstantial evidence of the defendant's understanding that the cocaine was destined for the United States, including Putman's testimony that the United States is the largest consumer of cocaine in the world and that approximately 90% of the cocaine that transits through the Dominican Republic, which was the immediate destination for the planned cocaine shipment, ends up in the United States.

The defendant points to evidence that, in his view, either suggests that he did not know where the cocaine was going or indicates that he thought the Dominican Republic was its final

6

destination.  He also argues that he was not explicitly told in any recorded conversation that the cocaine would be delivered to the United States.  These arguments fail to consider the evidence in its totality.  They also overlook the evidence presented at trial that drug traffickers use coded language and avoid explicit references to the United States.  In light of that, the conversations in which the defendant took part are more than enough by themselves for a reasonable juror to infer that the defendant believed the cocaine was headed for the United States.

The defendant also argues that Rojas was not a credible witness, and that Rojas' testimony that the defendant said the "cocaine must be going to the U.S." can be understood to reflect nothing more than the defendant's "guessing."  The jury was tasked with assessing Rojas' credibility and the weight that should be given to his testimony.  He was cross-examined at length by defense counsel and it was not unreasonable for the jury to conclude he was providing them with truthful testimony.  When Rojas' testimony is viewed in light of the other evidence, the jury could reasonably have concluded that the defendant stated that the "cocaine must be going to the U.S." and that this statement should be taken at face value.

The defendant also disregards that the jury was properly charged with conscious avoidance.  Even if the evidence were not

7

otherwise sufficient, there is ample evidence to support a conclusion that the defendant engaged in conscious avoidance with respect to an obvious likelihood that the cocaine was destined for the United States.

II. Intent That Machineguns Would Be Used

A. Sufficiency of Evidence

As to the second count, the defendant argues that the Government failed to prove that he intended that firearms would be used or possessed in connection with the drug importation conspiracy. The jury was instructed as follows with respect to Count Two:

> The Government must prove that the conspiracy had at least one of the objects the Indictment charges: (i) to use or carry firearms during and in relation to the commission of the conspiracy charged in Count One, or (ii) to knowingly possess firearms in furtherance of the conspiracy charged in Count One. The Government need not prove both objects. . . .
>
> . . .
>
> The "use" of a firearm requires its active employment. Examples of the use of firearm include brandishing and displaying the firearm.
>
> To "carry" a firearm means to have the firearm within your control in such a way that it furthers the commission of the crime.
>
> As I previously instructed you, the word "possession" means having custody or control of an object. Proof of ownership is not required. Nor is it necessary that an individual have a firearm on his person to have possession of it.

8

The Court reiterated to the jury that "[t]he Government must prove beyond a reasonable doubt that the defendant knew and intended that firearms would be possessed, carried, or used to further the conspiracy charged in Count One."

The jury was further instructed as follows:

If you find that the Government has proven beyond a reasonable doubt that the defendant is guilty of participating in the conspiracy charged in Count Two, you must also determine whether the Government has proven beyond a reasonable doubt that any of the firearms at issue was a machinegun.  That is, you must determine whether the Government has proven beyond a reasonable doubt that an agreement or understanding between two or more persons existed from in or about July 2019 to September 2020 either (i) to have a machinegun used or carried during and in relation to the commission of the conspiracy charged in Count One, or (ii) to have a machinegun knowingly possessed in furtherance of the conspiracy charged in Count One; and that the defendant intentionally and knowingly became a member of that conspiracy.

There was ample direct and circumstantial evidence to support the jury's conclusion that the Government proved beyond a reasonable doubt that the defendant knew and intended that firearms -- specifically, machineguns -- would be possessed, carried, or used to further the drug importation conspiracy.  As described by multiple witnesses and in multiple recorded conversations, including in the defendant's own words, the defendant's role was to provide "coverage" and "protection" for the scheme.  The defendant stated that he would have certain FELCN officers remain at the airport to protect the plane.

9

There was also evidence that FELCN officers carried standard-issue machineguns.  Indeed, when the defendant was cross-examined at trial, he admitted that during his pre-trial meetings with the Government he told the Government that he planned to order FELCN officers to provide protection for the plane at the airport and that they would be carrying their service weapons.

The defendant largely focuses on testimony that he also planned to divert FELCN officers away the airport.  But this argument ignores the aforementioned evidence that he planned to task other FELCN officers with protection of the cocaine shipment.

The defendant also suggests that there was no plan that the firearms would be "used" in furtherance of the drug trafficking conspiracy because FELCN officers normally keep their machineguns in the "safe" position.  This argument fails.  As the jury was instructed, it was sufficient for the Government to prove that the firearms were possessed, carried, or used, and a firearm may be used simply by being brandished or displayed.

B.    Jurisdiction

The defendant next argues that Count Two is jurisdictionally defective because it does not apply to acts committed outside the United States.  This legal argument is not a proper subject of a Rule 29 motion, which must be limited to

10

claims that "the evidence is insufficient to sustain a conviction."  Fed. R. Crim. P. 29(a).  In any event, this argument fails for the reasons explained in the Opinion of August 22 after it was raised on a motion to dismiss.  United States v. Davila-Perez, No. 19cr91-7, 2025 WL 2430634, at *2-3 (S.D.N.Y. Aug. 22, 2025).  To the extent that the defendant argues that United States v. Siddiqui, 699 F.3d 690 (2d Cir. 2012), is no longer good law, that argument is unpersuasive.

III. Venue

Finally, the defendant argues that the Government failed to prove venue because the defendant had not yet been arrested or brought to the United States at the time the indictment was filed in the Southern District of New York.  This is essentially an argument that the Court erred when it gave the following instruction to the jury:

> Offenses committed outside the territory of the United States may be prosecuted in the Southern District of New York so long as any member of the conspiracy is brought into the United States by arriving first in the Southern District of New York.  The Southern District of New York includes New York County (Manhattan), the Bronx, and Westchester Counties.  For example, if you determine that any of the defendant's co-conspirators was first brought into the United States in connection with his prosecution by arriving at an airport within the Southern District of New York, venue is appropriate.

The defendant and the Government stipulated at trial to facts demonstrating that the defendant's co-conspirators were brought

first to the Southern District of New York when they were extradited on the same indictment as the defendant.

The defendant's challenge to venue is not a proper subject of a Rule 29 motion because it does not concern the sufficiency of the evidence.  "A Rule 29 motion . . . is not the proper vehicle for raising an objection to jury instructions."  United States v. Crowe, 563 F.3d 969, 973 (9th Cir. 2009).  The Court also addressed this argument ahead of trial in a conference of October 10.  In any event, it is well established that venue is proper in the district where a defendant or his co-conspirator is first brought into the United States, even if that person arrives in the United States after being indicted.  See United States v. Rommy, 506 F.3d 108, 120 n.6 (2d Cir. 2007); United States v. Feng, 277 F.3d 1151, 1155-56 (9th Cir. 2002).

## Conclusion

The defendant's November 19, 2025 motion for a judgment of acquittal is denied.

Dated:    New York, New York
          December 11, 2025

_____
DENISE COTE
United States District Judge

12